UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | |
|---|---|
| SALLEY HANLEY, et al.,<br><br>    **Plaintiffs,**<br><br>V.<br><br>NICHOLAS BRUMBACK, in his individual capacity,<br><br>    **Defendant.** | CIVIL ACTION NO. 6:19-254-KKC<br><br><u>OPINION AND ORDER</u> |

\*\*\* \*\*\* \*\*\*

Plaintiffs Salley Hanley, Cortney Hubbard, Jamie Wilson, and Raymond L. Wilson ("Plaintiffs") brought a civil rights action against Defendant, Kentucky State Police Trooper Nicholas Brumback ("Brumback"), in his individual capacity. (DE 6). Brumback argues that the claims asserted in the Complaint should be dismissed for failure to state a cause of action under FED. R. CIV. P. 12(b)(6). For the reasons below, the Court GRANTS the motion, in part, and DENIES the motion, in part.

    **I.**    **Background**

On October 27, 2018, Brumback responded to a call regarding a dispute at 72 Lunsford Hollow Road in McKee, Kentucky. (DE 1, ¶ 9). Upon his arrival, Brumback met with alleged victims, Kenneth Wilson and Kristi Wilson, who informed him that they had been assaulted by Kevin Wilson and Plaintiffs Cortney Hubbard ("Hubbard") and Raymond L. Wilson ("Wilson"). (*Id.*, ¶ 11). Following the exchange, Brumback proceeded to the residence of Plaintiffs Wilson and Salley Hanley ("Hanley") to further investigate. (*Id.*, ¶ 12). Once at the

1

Wilson-Hanley home, Brumback—apparently in extreme agitation—demanded that all occupants exit the residence and wait on the porch. (*Id.*, ¶¶ 15-16). However, given his apparent demeanor, the occupants "feared for their safety" and did not comply with his request. (*Id.* at ¶ 17). Brumback allegedly "stormed" into the house anyway; in doing so, he kicked Hubbard's baby, who had been lying on a blanket on the floor. (*Id.*, ¶¶ 20-22).

Following his entry, Brumback approached Hanley, proceeded to pull her by the arm and throw her onto the floor of an adjacent room. (*Id.*, ¶¶ 21, 25). Wilson—observing the altercation between the officer and his wife—informed Brumback that "he was being recorded and "demanded [that] he leave the premises immediately" (*Id.*, ¶ 26). Hearing this, Brumback allegedly "knock[ed] … Wilson to the ground[,] … beat[ing] him with his fists and a flashlight." (*Id.*, ¶ 27). Hubbard attempted to intervene by removing the flashlight from his hand, but was not successful. (*Id.* ¶¶ 32, 33). Brumback "punched, shoved, and threw [her] while Wilson was being beat[en]." (*Id.*).

Wilson's son, Jamie Wilson ("Jamie"), began recording the events with his phone—only to get it "knocked out of his hands and onto the ground." (*Id.*, ¶ 28). But Jamie still managed to call 911, whose recording allegedly confirms the attack. (*Id.* ¶ 29).

In the end, Brumback "violently subdued" the occupants and called for backup. (*Id.*, ¶ 35). Plaintiffs Wilson and Hubbard were arrested and charged with Assault Third Degree, Disorderly Conduct, Menacing, and Resisting Arrest. (*Id.*, ¶ 36).

As a result of the events on October 27, 2018, "Wilson suffered grievous injuries including deep lacerations on his head and ear, physical pain and suffering, … psychological harm, humiliation and terror." (*Id.*, ¶ 41). In turn, "Hanley suffered terror and fear…, humiliation…, the psychological trauma of being assaulted and deprived of her liberty[,] and the overwhelming sense of helplessness against the might and power of the Kentucky State

Police." (*Id.*, ¶ 42). Hubbard suffered "significant physical injury, pain and suffering." (*Id.*, ¶ 34). Her baby suffered no "serious physical injury." (*Id.*, ¶ 24).

Plaintiffs filed suit on October 28, 2019 pursuant to 28 U.S.C. § 1983, alleging federal constitutional and state law claims. (DE 1).[1] Count One alleges that Brumback unlawfully entered the residence without a warrant, using excessive force against the plaintiffs in violation of the Fourth and Fourteenth Amendments. (*Id.*, ¶ 43). Count Two asserts state-law assault and battery claims for throwing Hanley to the ground, punching and hitting Wilson, knocking Jamie's phone to the ground, and assaulting Hubbard. (*Id.*, ¶¶ 45-46). Count Three presents an abuse of process claim under state law on behalf of Wilson and Hubbard, arguing that Brumback abused his position as a law enforcement officer to falsely charge them with assault in the third degree, as "leverage over them" given his own actions. (*Id.*, ¶¶ 47-51). Count Four seeks punitive damages by all plaintiffs under KRS § 411.184. At the time this Complaint was filed, the charges against Wilson and Hubbard were pending. *Id.*, ¶¶ 37.

On December 4, 2019, Wilson and Hubbard appeared in Jackson County Circuit Court in McKee, Kentucky, and pleaded guilty to amended charges of assault in the fourth degree pursuant to *North Carolina v. Alford*, 400 U.S. 25 (1970).[2] Wilson received a term of 47 days of imprisonment, time served, while Hubbard received a term of 7 days. (DE 6-2).

---

[1] Pursuant to 28 U.S.C. § 1331, this Court has original jurisdiction over all civil claims arising under the Constitution, laws, or treaties of the United States; this includes 42 U.S.C. § 1983. As to state law claims, a federal court can maintain pendant jurisdiction over state law claims if both the state and federal claims derive from a common nucleus of operative fact and if the plaintiff would be expected to try all of her claims in one judicial proceeding. *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725 (1966). Here, because these claims all relate to a single altercation and the Plaintiffs would be expected to try all of their claims in one proceeding, the Court finds pendant jurisdiction over the state law claims proper.

[2] "In its strictest sense, ... an 'Alford plea' refers to a defendant who pleaded guilty but maintained that he is innocent. ... [It] is nothing more than a guilty plea entered by a defendant who either: 1) maintains that he is innocent; or 2) without maintaining his innocence, 'is unwilling or unable to admit' that he committed 'acts constituting the crime.'" *United States v. Tunning*, 69 F.3d 107, 110 (6th Cir. 1995) (quoting *Alford*, 400 U.S. at 37).

From these convictions, Brumback asserts that dismissal of some of these claims is proper because the *Heck* doctrine bars Wilson and Hubbard's false arrest, excessive force, and abuse of process claims due to their state assault convictions; and that Jamie's claim for assault and battery fails to state a cause of action under Kentucky law. (DE 6 at 3-7).

Responding in opposition, the plaintiffs still argue that some of the claims remain untouched; namely, since the claims of unlawful entry and excessive use of force pertain to *all* plaintiffs—not just Wilson and Hubbard—and that the motion does not move to dismiss the rest of the plaintiffs' state law assault and battery claims, as well as the punitive damages claim. (DE 7 at 4). Officer Brumback has replied (DE 15). This matter is ripe for adjudication.

## II. Standard

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. However, "a formulaic recitation of a cause of action's elements will not do." *Twombly*, 550 U.S. at 555. Courts "must construe the complaint in the light most favorable to the plaintiff and accept all allegations as true." *Keys v. Humana, Inc.*, 684 F.3d 605, 608 (6th Cir. 2012). Yet, at the same time, Courts need not accept "legal conclusion[s] couched as [] factual allegation[s]." *Papasan v. Allain*, 478 U.S. 265, 286 (1986).

Hinging on Rule 8's minimal standards, *Twombly* and *Iqbal* require a plaintiff to "plead facts sufficient to show that her claim has substantive plausibility." *Johnson v. City of Shelby*, 574, U.S. 10, 12 (2014). Where plaintiffs state "simply, concisely, and directly events that . . . entitle[] them to damages," the rules require "no more to stave off threshold dismissal

4

for want of an adequate statement." *Id.*; *El-Hallani v. Huntington Nat. Bank*, 623 F. App'x 730, 739 (6th Cir. 2015) ("Although *Twombly* and *Iqbal* have raised the bar for pleading, it is still low."). Still, however, a complaint is subject to dismissal under Rule 12(b)(6) if it fails to plead facts that plausibly state a claim for relief. *See Cataldo v. U.S. Steel Corp.*, 676 F.3d 542, 547 (6th Cir. 2012).

When applying the Rule 12(b)(6) standard, the court must presume all of the factual allegations in the complaint are true. *Total Benefits Planning Agency, Inc. v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 434 (6th Cir. 2008) (citing *Great Lakes Steel v. Deggendorf*, 716 F.2d 1101, 1105 (6th Cir. 1983)).

## III. Analysis

### a. The *Heck* Doctrine

Under *Heck*, a plaintiff is barred from bringing a constitutional claim pursuant to 42 U.S.C. § 1983 if a judgment in his favor would demonstrate or imply the invalidity of his criminal conviction. *Heck v. Humphrey*, 512 U.S. 477, 486–87 (1994); *Wilkinson v. Dotson*, 544 U.S. 74, 81–82 (2005) ("[A] state prisoner's § 1983 action is barred (absent prior invalidation)—no matter the relief sought (damages or equitable relief), no matter the target of the prisoner's suit ...—if success in that action would necessarily demonstrate the invalidity of confinement or its duration."). In *Heck,* the Supreme Court held that a plaintiff could not bring a § 1983 action if a favorable judgment "would necessarily imply the invalidity of his conviction or sentence; if [so], the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated" by executive order, reversal on direct appeal, or writ of habeas corpus. *Id*. at 487. If granting the relief sought in the plaintiff's § 1983 complaint would necessitate finding that the state court conviction or sentence was invalid, it must be dismissed. *Id.*

5

A two-part inquiry determines whether a claim is barred. The first part of the *Heck* test consists of determining whether the plaintiffs' conviction has been overturned or invalidated. *Id.* at 486–87. If so, the inquiry stops there, and the claim is not barred. If not, the Court must determine "whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence." *Id.* at 487. If it would, the claim is barred.

But "the salient question is whether the § 1983 claim 'necessarily' implies the invalidity of the state-court conviction." *Swiecicki v. Delgado*, 463 F.3d 489, 504 (6th Cir. 2006) (Sutton, J., concurring in part and dissenting in part) (citing *Hill v. McDonough*, 547 U.S. 573, 583, (2006)), *abrogated on other grounds by Wallace v. Kato*, 549 U.S. 384, (2007). This requires "the court … [to] look both to the claims raised under § 1983 and to the specific offenses for which the § 1983 claimant was convicted." *Schreiber v. Moe*, 596 F.3d 323, 334 (6th Cir. 2010).

### i. False Arrest & Excessive Force

Brumback moves to dismiss Wilson and Hubbard's false arrest and excessive force claims, arguing that these claims are precluded by *Heck* since their state court convictions have not been invalidated, and thus, they cannot be challenged in a § 1983 action. As an initial matter, however, the Court will address Wilson and Hubbard's contention that there is an existing, inherent tension between an Alford plea and the *Heck* doctrine.

The Sixth Circuit, and other federal circuits have concluded that an Alford plea is a plea of guilty that constitutes a criminal conviction. *See United States v. McMurray*, 653 F.3d 367, 381 (6th Cir. 2011) ("For a conviction resulting from an Alford-type guilty plea, the defendant has necessarily admitted to the elements of the charge but not necessarily the underlying factual basis (internal quotation marks and citation omitted)); *Payton v. Normand*, 599 F. App'x. 190, 192 (5th Cir. 2015) (holding that *Heck* "applies equally to Alford

6

pleas" (citation omitted)); *Green v. Chvala*, 567 F. App'x. 458, 459 (7th Cir. 2014) ("Like any plea, an Alford plea results in a conviction to which *Heck* applies."). *Havens v. Johnson*, 783 F.3d 776, 784 (10th Cir. 2015) ("[T]he *Heck* doctrine derives from the existence of a valid conviction, not the mechanism by which the conviction was obtained ..., so it is irrelevant that [the plaintiff] entered an Alford plea."); *Ojegba v. Murphy*, 178 F. App'x. 888, 888 (11th Cir. 2016) (finding the excessive force claim to be *Heck*-barred, the Court noted that "[t]he fact that in this case the plea was an Alford plea is of no consequence").

Hubbard and Wilson pleaded guilty to assault in the fourth degree. Under Kentucky law, the elements include: "(a) ... intentionally or wantonly caus[ing] physical injury to another person; or (b) [w]ith recklessness ... physical injury [is caused] to another person by means of a deadly weapon or a dangerous instrument." KRS § 508.030. Plaintiffs contend that because their pleas were given pursuant to *Alford*, and they did not really "admit to any specific fact of assault[,]" the *Heck* bar is inapplicable as to them and no probable cause existed. (DE 7 at 2). But this just is not true.

The Complaint alleges that Brumback was dispatched to the Wilson-Hanley residence to investigate an assault and an altercation that involved Hubbard and Wilson, among others. (DE 1 at ¶¶ 9-11). Wilson and Hubbard do not dispute—but acknowledge—these factual circumstances, including their entry of guilty pleas, which have not been invalidated. In addition, they do not entirely dispute their assault on Brumback; instead, they provide an ambivalent answer, stating "to the extent there was an assault ... it was a very minor assault" (DE 7 at 6).

An arrest is valid so long as there is probable cause for a single charge of an arrestable offense." *Miller v. Sanilac Cty.*, 606 F.3d 240, 248 (6th Cir. 2010). "A police officer has probable cause only when he discovers reasonably reliable information that the suspect has

7

committed a crime." *Gardenhire v. Schubert*, 205 F.3d 303, 318 (6th Cir. 2000). Taken together, the facts clearly lead to the conclusion that there was probable cause to arrest Wilson and Hubbard. Any argument to the contrary would, indeed, challenge their underlying convictions, flying in the face of *Heck*. Plaintiffs cannot sustain a claim of false arrest and this claim must be dismissed.

With respect to whether *Heck* bars an excessive-force claim, "[t]he key inquiry . . . is whether [the] excessive-force claim pursuant to § 1983 would have implied the invalidity of [the] criminal convictions." *Delgado*, 463 F.3d 489, 493 (6th Cir. 2006). The Sixth Circuit has explained that *Heck* operates to bar a § 1983 claim in an excessive force claim in two circumstances:

> "The first is when the criminal provision makes the lack of excessive force … an element of the crime." *Schreiber v. Moe*, 596 F.3d 323, 334 (6th Cir. 2010) (citing *Heck*, 512 U.S. at 486 n. 6, 114 S.Ct. 2364). "The second is when excessive force … is an affirmative defense to the crime...." *Id.* (citing *Cummings v. City of Akron*, 418 F.3d 676, 684 (6th Cir. 2005), for the proposition that "an assault conviction barred an excessive-force claim because the plaintiff did not raise excessive force as a defense*."). See also Gottage v. Rood*, 533 F. App'x 546, 550 (6th Cir. 2013); *Walker v. City of Lebanon*, No. 3:12–CV–855–H, 2013 WL 6185402, at *4 (W.D. Ky. Nov. 25, 2013). In each of these circumstances, the § 1983 suit would "seek[ ] a determination of a fact that, if true, would have precluded the conviction." *Schreiber*, 596 F.3d at 334. Therefore, in this Circuit, if a plaintiff asserts a claim that contradicts an element of an underlying criminal offense, or if that claim could have been asserted in criminal court as an affirmative defense, *Heck* applies to bar the § 1983 suit.

*Hayward v. Cleveland Clinic Found.*, 759 F.3d 601, 608-09 (6th Cir. 2014).

Brumback argues that allowing the excessive force claims to proceed would directly attack the state court criminal proceedings, resulting in a violation of *Heck*. (DE 6 at 5). In their response, plaintiffs seek to justify their actions against Brumback stating that, any action on their part did not justify Brumback's own use of force, but do not also allege that

8

they acted out of self-defense. Additionally, plaintiffs do not provide any case law finding that *Heck* is entirely inapplicable to this situation either.

At this juncture, the Court is not entirely clear as to how the sequence of events in the night in question unfolded. It is clear, however, that Plaintiffs have plausibly alleged that an unconstitutional use of force occurred prior to them taking action on their end, and prior to them being subdued; that much, at least Brumback has not contested. For this reason, *Heck* does not bar the plaintiffs' excessive force claim and they may proceed with this claim.

### ii. Abuse of process

The Complaint alleges that Officer Brumback was "looking for a fight" when he entered the residence, and that charging Wilson and Hubbard with assault third-degree charges was done in an effort to prevent them from seeking legal recourse for the "unjustified" attack on them. (DE 1, ¶ ¶ 47-50). Brumback argues that these allegations are insufficient to support an abuse of process claim as a matter of law, and that, in any case, *Heck* serves as a barrier given their guilty pleas to assault, fourth degree. (DE 6 at 6-7).

The essential elements of an abuse of process claim under Kentucky law are "(1) an ulterior purpose and (2) a willful act in the use of the process not proper in the regular conduct of the proceeding." *Simpson v. Laytart*, 962 S.W.2d 392, 394 (Ky. 1998). A successful claim requires proof of "[s]ome definite act or threat not authorized by the process or aimed at an objective not legitimate in the use of the process." *Id.* A claim fails if "the defendant has done nothing more than carry out the process to its authorized conclusion even though with bad intentions." *Id.* at 394–95. An ulterior purpose is "[t]he crux of an abuse of process action." *Bourbon Cty. Joint Planning Comm'n v. Simpson*, 799 S.W.2d 42, 45 (Ky. Ct. App. 1990). Kentucky courts look for " 'a willful act ... not proper in the regular conduct of the proceeding,' used as a 'form of coercion to obtain a collateral advantage.' " *Sprint Communications Co.,*

9

*L.P. v. Leggett*, 307 S.W.3d 109, 111, 117 (Ky. 2010) (quoting *Bourbon Cty.*, 962 S.W.2d at 395).

Wilson and Hubbard acknowledge that they lack evidence to prove that intimidation and coercion occurred in order to succeed on this claim but should—at least— be permitted to conduct discovery to establish Brumback's intent. (DE 7 at 10). And they add that, while they entered guilty pleas to assault in the fourth degree, it was only done in an effort to avoid risking up to five years in jail pursuant to *Alford*. (*Id.* at 11).

At this time, there is no evidence to support the contention that Officer Brumback had an illegitimate or improper motive that led him to falsely charge plaintiffs with a crime. There is only a vague inference with no supporting facts. "A plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief requires more than labels and conclusions … [such that the] allegations [are] enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. The plaintiff must plead "enough facts to state a claim to relief that is plausible on its face" and to nudge his claim "across the line from conceivable to plausible." *Id.* at 570. Because this has not been done, Brumback's motion to dismiss as to the abuse of process claim is granted. The Court need not discuss its application to *Heck* under these circumstances.

### b. The assault and battery claim as to Jamie Wilson's cellphone

The Complaint alleges that Wilson's son, Jamie, was trying to record her father's alleged beating, "but the phone was knocked out of his hands onto the ground." (DE 1, ¶ 28). Brumback argues that this claim is insufficient to state a cause of action for assault and battery. (DE 6 at 6). Plaintiffs contend that, even though Brumback may not have "intended" to bring about the consequences, and there was no "[s]kin to skin contact[,]" a battery still occurred. (DE 7 at 8-9). They mention nothing about an assault.

10

> "Assault is a tort which merely requires the threat of unwanted touching of the victim, while battery requires an actual unwanted touching." *Banks v. Fritsch*, 39 S.W.3d 474, 480 (Ky. App. 2001). These are two distinct and independent legal claims. *Ali v. City of Louisville*, 3:05-CV-427-R, 2006 WL 2663018 at *3 n. 7 (W.D. Ky. Sept. 15, 2006). As a result, an action for battery can lie *without* assault (if, for example, there was no threat perceived by the victim) and an action for assault can lie *without* battery (if, for example, there was a threat of physical contact which ultimately did not occur).

*Dahl v. Kilgore*, No. 3:18-CV-501-CRS, 2018 WL 6574785, at * 5 (W.D. Ky. Dec. 13, 2018) (emphasis added).

In the Complaint, the allegation as to Jamie in the entirety is that "Brumback … [k]nocked Jamie Wilson's phone to the ground." (DE 1, ¶ 46(c)). The facts, as alleged in the Complaint and Plaintiffs' response, simply do not describe any unwanted physical or offensive contact to Jamie's person; nor is there any allegation that Jamie felt threatened in any way. Therefore, Brumback's motion to dismiss as this assault and battery claims will be granted.

## IV. Conclusion

Accordingly, and the Court being sufficiently advised, it is hereby ORDERED as follows:

1. Defendant Brumback's motion to dismiss (DE 6) is GRANTED in part and DENIED in part.

2. Plaintiffs Hubbard and Wilson's false arrest and abuse of process claims are DISMISSED. Jaime's claim of assault and battery for the cell phone is DISMISSED.

3. Plaintiffs' excessive force claim and all other, un-challenged claims in the Complaint remain.

Dated October 26, 2020



KAREN K. CALDWELL
UNITED STATES DISTRICT JUDGE
EASTERN DISTRICT OF KENTUCKY